# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH ESTER, JR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-09-551-M |
| ) | |
| EVERETT VAN HOESEN, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a pretrial detainee appearing pro se, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights while incarcerated in Kay County, Oklahoma. The matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A Special Report was filed in accordance with this court's order and with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) [Doc. No. 22]. The only named Defendant, Sheriff Everette Van Hoesen,[1] has filed a motion for summary judgment [Doc. No. 54] to which Plaintiff has failed to respond despite the undersigned's *sua sponte* order extending his response time and advising him of the consequences of failing to controvert Defendant Van Hoesen's statement of material facts [Doc. No. 56]. For the reasons which follow, the undersigned recommends that Defendant Van Hoesen's motion for summary judgment be granted.

---

[1] Plaintiff complaint states that Defendant's surname is Van Housen [Doc. No. 1]; according to Defendant's answer, the spelling of his name is Van Hoesen [Doc. No. 18].

**Plaintiff's Complaint**

In describing the background of his case, Plaintiff alleges that following his January 17, 2009, arrest and confinement in the Kay County jail he "submitted a request to visit with a medical and mental health care doctor regarding my medical and mental health problems, since I have a long documented history of both. . . ."[2] *Id.* at sequential p. 2. He maintains that treatment for his mental conditions was denied because, according to a member of Defendant's staff, the County could not afford a "mental health doctor." *Id.* Plaintiff further contends that he has not been "provided with a clean, safe, and sanitary place in wich to be confined." *Id.*

In the first of two counts asserting a violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, *id.* at sequential p. 3, Plaintiff repeats his allegation that he has been denied mental health treatment due to the jail's lack of funds. *Id.* at sequential p. 4. In this regard, Plaintiff maintains "that it is the Defendants responsibility to provide the same regardless of his financial condition." *Id.* Plaintiff further alleges that on one occasion he received improper medical care when his "blood sugar . . . drop[ped] drasticly" after "[t]he medical staff placed me on diabetic medication without first testing me for the disease." *Id.* Plaintiff's final contention in this count is "that the Defendants [ ] are illegally charging myself and all inmates for mental and medical care, regardless of the fact that mental care is not being provided . . . ." *Id.* at sequential pp. 4 - 5.

---

[2]Unless otherwise indicated, quotations in this report are reproduced verbatim.

Plaintiff complains in his second count of unsanitary and unsafe cells and pods, of overcrowded cells, of the fact that "inmates are forced to sleep on the floors," of plumbing leaks in most cells that allow sewage to leak onto the floors, and that "[t]he inmates are not being provided with basic bare necessities such as sheets, towles, shampoo, deodorant, ect. and the food quality and quanity does not provide proper nutrition." *Id.* at sequential p. 5.

Plaintiff's third count states that "Defendants have and continue to refuse to provide Due Process by punishing inmates for misconduct without providing any type of disciplinary process. Privilages are suspended as well as solitary confinement is imposed upon inmates on a regular basis." *Id.* at sequential p. 6.

**Standard of Review**

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382,* 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted). And, while a *pro se* plaintiff's complaint is liberally construed, a *pro se* plaintiff must adhere to the same rules of procedure which are binding on all litigants. *Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, strict adherence by a *pro se* plaintiff to the requirements of Fed. R. Civ. P. 56 is required. With respect to those requirements, the Supreme Court has determined that:

the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Because Plaintiff failed to respond to Defendant's motion, he has failed to dispute Defendant's factual allegations under the federal procedural rule applicable to summary judgment determinations:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must– by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). In this same vein, the local rules of this court provide in part that "[a]ll material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." LCvR56.1(c).

**Analysis**

**Exhaustion of Administrative Remedies**

In connection with all but Plaintiff's claim as to his mental health treatment, Defendant Van Hoesen seeks summary judgment on the ground that Plaintiff has failed to exhaust his administrative remedies [Doc. No. 54, pp. 13 - 14]. The Prison Litigation Reform

4

Act of 1995 ("PLRA") requires that an inmate exhaust *all* available administrative remedies *before* resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id*. In construing this legislation, the United States Supreme Court has determined "that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). An inmate, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the facility's grievance procedure. *Id.* at 218. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary,* 511 F.3d 1109, 1112 (10th Cir. 2007).

In connection with Plaintiff's exhaustion of available administrative remedies, the undersigned finds that the following facts are uncontradicted:

1. Inmates of the Kay County jail may submit a complaint form to address their grievances or issues [Doc. No. 54, Defendant's Statement of Uncontroverted Facts, at No. 34, citing Exhibit 1, Affidavit of Defendant Van Hoesen, Attachment B, page 8].

2. Plaintiff was aware of the grievance procedure [Doc. No. 54, Defendant's Statement of Uncontroverted Facts, at No. 34].

3. Plaintiff's file reflects that prior to filing his complaint on May 22, 2009, he submitted "Inmate Request and/or Complaint" forms on the following dates and with regard to the following issues:

> February 10, 2009 - skin issues due to soap and lack of lotion
> March 30, 2009 - his wish to stop receiving medication for his blood sugar
> April 23, 2009 - a request to see someone from Edwin Fair about mental health disease
> May 12, 2009 - a request to have his toenails clipped

[Doc. No. 54, Defendant's Statement of Uncontroverted Facts, at No. 34, citing Exhibit 3, Affidavit of Stephanie Ringgold, Attachment B].

Pursuant to the Inmate Rules of the Kay County Detention Facility, an inmate must report a complaint, in writing, to the detention officer on duty; the complaint form is then delivered to the Facility Administrator; if valid, the complaint is forwarded to the Sheriff for processing; the Sheriff may direct an investigation into a valid complaint; a written report and findings and recommendations is submitted to the Sheriff for review; and, a copy of the complaint, findings, and action taken is placed in the inmate's file [Doc. No. 54, Defendant's Statement of Uncontroverted Facts, at No. 34, citing Exhibit 1, Affidavit of Defendant Van Hoesen, Attachment B, page 8].

Relying on the foregoing material facts, Defendant Van Hoesen acknowledges that Plaintiff exhausted the facility's remedies regarding his request for mental health treatment – Count I of his complaint [Doc. No. 1] – but asserts that Plaintiff did not complain at the administrative level about being placed on diabetic medication without having first been

6

tested for the disease, *id.,* about being illegally charged for mental and medical care, *id.,* about the poor conditions of the facility, Count II of the complaint [Doc. No. 1], and, about punishing inmates for misconduct without due process, Count III of the complaint [Doc. No. 1].

In the absence of a response by Plaintiff to Defendant's summary judgment motion with its supported statement of uncontroverted, material facts, the undersigned finds that Plaintiff failed to exhaust his claim that he was illegally charged for mental and medical care, his claim that he was damaged by poor facility conditions, and his claim that his rights under the Due Process Clause were violated in connection with a misconduct charge. Nonetheless, because the Kay County Detention Facility's grievance procedure contains no time frames and because Plaintiff is still incarcerated at the facility, exhaustion of these claims remains possible. Thus, dismissal of these claims without prejudice to refiling, not summary judgment, is available to Defendant on the grounds of Plaintiff's failure to exhaust. Because, however, Defendant has also correctly maintained that summary judgment is warranted on the merits of these three claims, these claims are addressed below in additional to Plaintiff's mental and medical health[3] claims.[4]

---

[3]In connection with Plaintiff's claim that he was subjected to cruel and unusual punishment when he was placed on diabetic medication without being tested for the disease [Doc. No. 1, sequential p. 4], the undersigned considers the question of whether Plaintiff exhausted the claim to be questionable. Even though Plaintiff did not specifically advise facility officials of his complaint that he had been placed on a drug without proper testing, he did alert those officials to the fact that he was having problems with his diabetes medication [Doc. No. 54, Exhibit 4, Attachment A, p. 14]. Without resolving the question,
(continued...)

7

**Health Care**

The Eighth Amendment requires prison officials to provide humane conditions of confinement, including access to the basic necessities of medical care. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).[5] The United States Supreme Court has made clear that "deliberate indifference to serious medical needs of prisoners constitut[ing] the 'unnecessary and wanton infliction of pain,'" may amount to a violation of the Eighth Amendment. *Id.* at 104 (citation omitted). This deliberate indifference standard has two components: (1) an objective component in which the plaintiff's pain or deprivation must be shown to be sufficiently serious, and (2) a

---

[3](...continued)
the undersigned has simply determined the claim on its merits along with the clearly unexhausted claims.

[4]In addition to correctly maintaining that he is entitled to summary judgment based on the lack of factual merit of Plaintiff's five claims, Defendant Van Hoesen is also correct in arguing that Plaintiff has failed to demonstrate any personal involvement by the Sheriff in connection with the events relevant to those claims. Personal participation is an essential element of a § 1983 claim. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). As a result, a supervisor incurs no § 1983 liability for a subordinate's conduct that results in the deprivation of a constitutional right unless an "affirmative link" exists between the deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise. *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988); *see also Coleman v. Turpen*, 697 F.2d 1341, 1347 n.7 (10th Cir. 1982) (respondeat superior generally does not apply in § 1983 cases). Thus, where Plaintiff fails to establish that Defendant Van Hoesen was personally involved in the constitutional violations which Plaintiff maintains were committed by various Kay County jail subordinates, Defendant Van Hoesen has no § 1983 liability resulting automatically from his status as a supervisor.

[5]*See Olsen v. Layton Mills Mall,* 312 F.3d 1304, 1315 (10th Cir. 2002) (citation, quotations, and brackets omitted) ("Although pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983.")).

subjective component in which it must be shown that the offending officials acted with a sufficiently culpable state of mind. See *Handy v. Price,* 996 F.2d 1064, 1067 (10th Cir. 1993); *Miller v. Glantz,* 948 F.2d 1562, 1569 (10th Cir. 1991). As to the objective component, the Tenth Circuit has stated that a condition is sufficiently serious where the condition is one diagnosed by a physician as mandating treatment or that is so obvious even a lay person would easily recognize the necessity for a doctor's attention. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980). As to the subjective prong of this test, a plaintiff must establish that a defendant knew of a substantial risk of harm and failed to take reasonable measures to abate it. See *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999). Such deliberate indifference may be shown where prison officials "have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment." *Ramos,* 639 F.2d at 575.

Not every claim of inadequate medical treatment rises to the level of a constitutional violation. A claim of medical malpractice or negligence plainly does not constitute a constitutional violation. *Estelle,* 429 U.S. at 105. As the Supreme Court has stated:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* at 106. *See Whitley v. Albers,* 475 U.S. 312, 319 (1986) (Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety"); *Handy,* 996 F.2d at 1067 (finding plaintiff's claim that prison doctor was negligent in treatment of Hepatitis C did not constitute a constitutional violation). Likewise, a disagreement over a course of treatment does not amount to a constitutional violation. *Ramos,* 639 F.2d at 575 ("a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment"). Plaintiff's claims and the evidence in this case will be examined against these standards.

### **Mental Health Care**

Plaintiff maintains that Defendant Sheriff Van Hoesen was deliberately indifferent to his serious mental health needs by denying him mental health treatment [Doc. No. 1, sequential pp. 2 - 4]. Specifically, Plaintiff complains that he "was denied treatment for [his] mental conditions primarily becase according to the Defendants' staff they could not afford a mental health doctor because the county was financially unable to." *Id.* at sequential p. 2. In this regard, Plaintiff alleges that

> [o]n numerous occassions I have requested mental health care treatment from the staff at the Defendants' facility. I have been denied treatment on all occassions. The nurse Mrs. Liz Kuhn has stated on several occassions that mental health care could not be provided because the facility was without funds to hire a mental health doctor. Plaintiff contends that it is the Defendants responsibility to provide the same regardless of his financial condition.

*Id.* at sequential p. 4.

The undersigned finds that the following facts relevant to Plaintiff's mental health care are uncontradicted:

1. The Kay County jail contracts with Health Professionals, LTD, ("Health Professionals") to provide inmate health services at the jail. The facility's nurse and doctor are contracted through Health Professionals; the nurse is contracted to be at the jail for thirty-two hours per week, and a doctor visits the facility on an as needed basis [Doc. No. 54, Defendant's Statement of Uncontroverted Facts, at No. 1].

2. Health Professionals does not provide mental health services. Nonetheless, they will evaluate an inmate, provide mental health care medication, and determine if further mental health care is necessary. *Id.* at No. 2.

3. An inmate seeking mental health treatment first contacts Nurse Kuhn who evaluates the inmate. If the inmate requires further evaluation or treatment, Nurse Kuhn places the inmate on the doctor's list and the doctor will prescribe any medications the inmate needs. *Id.* at Nos. 4 and 14.

4. If the doctor or nurse determines that the inmate is at risk because of his mental health or that others are at risk because of his presence, he is sent to the Edwin Fair Community Mental Health Center in Ponca City, Oklahoma. *Id.* at No. 5, citing Exhibit 1, Affidavit of Defendant Van Hoesen. *See* ¶ 5.

5. Staff of Edwin Fair will not come to Kay County to examine or treat an inmate unless they have a prior relationship with the inmate or the inmate is a threat to themselves or others. [Doc. No. 54, Defendant's Statement of Uncontroverted Facts, at No. 6].

6. When Plaintiff arrived at the jail in January, 2009, he submitted a Sick Call Request Form. He saw Nurse Kuhn and discussed his health issues. *Id.* at No. 9, citing Exhibit 2, Plaintiff's deposition testimony. *See also* Exhibit 4, Affidavit of Liz Kuhn, Attachment A, Medical Records, p. 11.

7. On April 23, 2009, Plaintiff submitted an Inmate Request/Complaint Form – which he labeled as a Grievance – and stated as follows: "I am requesting to see someone from Edwind Fair about my mental health disease! I'm (ADDHD) Bi-polar and postdramic stress! I don't want no one from here or medical [] about this matter." [Doc. No. 54, Defendant's Statement of

11

Uncontroverted Facts, at No.10, citing Exhibit 4, Affidavit of Liz Kuhn, Attachment C].

8. After Plaintiff submitted his grievance regarding his mental health, Nurse Kuhn went to Plaintiff's cell with former Jail Administrator Stephanie Ringgold and, as a result of her evaluation, did not believe further treatment was necessary [Doc. No. 54, Defendant's Statement of Uncontroverted Facts, at Nos.11 and 16].[6]

9. Plaintiff testified by deposition as follows:

Q. Now, have you ever requested to see the doctor that is under contract with the jail?

A. He's not a psych doctor. She told me that herself.

Q. Okay. Have you ever requested to see him?

A. For what?

Q. Just to see him.

A. No.

Q. All right. Have you ever requested to see him to be prescribed mental health medication?

A. No.

Q. Okay. Have you requested mental health medication?

---

[6]In this regard, Plaintiff filed an unverified response to the Special Report and attached what he claims to be copies of multiple requests for mental health treatment [Doc. No. 32]. The undersigned notes that Exhibit B to the response – Plaintiff's copy of the April 23, 2009, grievance form – does not appear to be a duplicate of the form submitted by Defendant on summary judgment or in the Special Report [Doc. No. 22, Exhibit 1]. And, while Plaintiff's copy of the form indicates that there was no response to his request/grievance, he testified on deposition that the nurse and Stephanie [Ringgold]had met with him in regard to the grievance "documentation that [he] had submitted." [Doc. No. 54, Exhibit 2, p. 47, line 19].

12

> A. They asked me what did I take, and they said I can get it through the doctor, and that wasn't what I was - -
>
> Q. That's not what you wanted?
>
> A. That ain't the procedures, you know. I never dealt with a doctor, just per se doctor. It was always the psych doctors. There's a difference between just having a regular doctor and a person that's mental, mental that works with mental issues. This doctor over here works with just the physical form, anything with the ear, ear aches, scratches, bruises, broken bones, this and that. This person over here deals with your mental issues. That's what they care for, you know. What's wrong with you. You hearing noises and voices, you know, and folks are trying to grab on you, something like that, you know. . . .

*Id.* at No. 18, citing Exhibit 2, Plaintiff's Depostion, p. 42, line 18 - p. 43, line 24.

These uncontroverted, supported facts demonstrate that the medical personnel at the Kay County jail have been responsive to Plaintiff and his mental health situation and have provided him care, albeit not the care which Plaintiff desired. Upon his request, Plaintiff's mental health status was evaluated by Nurse Kuhn, a medical professional. Thereafter, Plaintiff made no request to been seen by the facility's physician to further press his mental health concerns. Neither did Plaintiff accept the facility's proffer of mental health medication. Instead, Plaintiff simply maintains that the facility's physician is not able to provide mental health treatment and that only a mental health specialist can provide him adequate and appropriate treatment. At best, Plaintiff – who has not claimed any injury – can assert a disagreement over his need for treatment by a mental health specialist, and such disagreement is not tantamount to a deliberate indifference to Plaintiff's serious medical

needs. See *Ramos*, 639 F.2d at 575. *See also Perkins v. Kan.Dep't of Corr.,* 165 F.3d 803, 811 (10th Cir. 1999). Plaintiff has not established that a constitutional violation occurred in connection with the facility's treatment of his mental health needs, and Defendant Sheriff Van Hoesen is entitled to summary judgment on this claim.

**Physical Health Care**

It is Plaintiff's contention that "the medical staff placed me on diabetic medication without first testing me for the disease. This mistake caused my blood sugar to drop drasticly." [Doc. No. 1, sequential p. 4]. The undersigned finds that the following facts relevant to Plaintiff's physical health care are uncontradicted:

1. Plaintiff is diabetic, and Dr. Cullinan of Heath Professionals placed him on Glipizide on March 5, 2009, because his blood sugar had been elevated [Doc. No. 54, Defendant's Statement of Uncontroverted Facts, No. 19]. Plaintiff's medical records show that on February 19, 2009, his blood sugar level was 160; on March 2, 2009, it was rechecked at the request of Plaintiff – who reported that his mother was diabetic – and it was 165; and, on March 5, 2009, the day the medication was started, it was at 169, making the third check that reflected an increased level. *Id.,*citing Exhibit 4, Affidavit of Liz Kuhn, Attachment A, p. 1].

2. Plaintiff took the medication for a period of time but on March 16, 2009, complained that the medication was too strong and he only wanted to take it once a day. This adjustment was made and Plaintiff was given the medication only once a day [Doc. No. 54, Defendant's Statement of Uncontroverted Facts, No. 19].

3. On March 31, 2009, Plaintiff decided he no longer wanted to take any dosage of Glipizide after his mother told him she did not believe he needed this medication. Although, and at his request, the medication was no longer given to him, it was agreed that medical staff would continue to monitor his blood sugar levels and would reevaluate his need for the medication if his blood sugar levels became elevated again. *Id.* at No. 20.

14

The foregoing, undisputed, and supported facts establish that Plaintiff received consistent care for his elevated blood sugar levels and that his condition was carefully monitored. At best, Plaintiff's claim that he was not properly tested before being placed on medication is one of malpractice[7] and is not tantamount to deliberate indifference to Plaintiff's serious medical needs. See *Estelle,* 429 U.S. at 106. The undersigned finds that the undisputed evidence of record fails to raise a genuine issue of material fact as to whether the medical staff acted with deliberate indifference to Plaintiff's medical condition. It is therefore recommended that Defendant Van Hoesen's motion for summary judgment be granted on this claim.

**Cost of Health Care**

Plaintiff alleges that Defendant Van Hoesen is "illegally charging [Plaintiff] for mental and medical care, regardless of the fact that mental care is not being provided (and a mental patient should not be charged anyway) and regardless of if the inmate is being treated for a preisisting or cronic illness." [Doc. No. 1, sequential pp. 4 - 5]. The following facts relevant to Plaintiff's claim are uncontroverted:

1. Pursuant to Okla. Stat. tit. 19 § 531, inmates are charged $8.00 as a copayment for medical services. Indigent inmates are not denied medical services [Doc. No. 54, Defendant's Statement of Uncontroverted Facts, at No. 7, citing Exhibit 3, Affidavit of Stephanie Ringgold, Attachment C, Plaintiff's Account Balance]. Plaintiff's Account Balance reflects that his account was debited in

---

[7]Plaintiff, in fact, testified in his deposition that he believed that the medical staff was trying to take care of him but that Ms. Kuhn was only a nurse and, that if she consulted a doctor, "I don't think he did it correctly." [Doc. No. 54, Exhibit 2, Plaintiff's Deposition, p. 57, lines 5 - 6].

15

the amount of $8.00 on one occasion between January 26, 2009, shortly after his incarceration, and May 22, 2009, the date he filed this lawsuit. Plaintiff was billed $8.00 for seeing the jail physician on February 13, 2009, leaving him with a balance of $12.89 in his account. *Id.* at Attachment C, p. 3. Plaintiff's medical records indicate that he was actually seen by Nurse Kuhn pursuant to his sick call request and was given creams for itchy skin [Doc. No. 54, Exhibit 4, Affidavit of Liz Kuhn, Attachment A, p. 1].

The foregoing establishes that Plaintiff was charged pursuant to State law for medical services which he requested and received. No constitutional violation has been established, and summary judgment in favor of Defendant Van Hoesen is proper.

**Conditions of Confinement**

Plaintiff maintains that the cells/pods in the Kay County jail are unsanitary and unsafe; the facility is being run at more than two times the maximum inmate capacity; inmates are forced to sleep on the floor and on the day room floors; most cells/pods have plumbing leaks resulting in sewage on the floors; inmates are not provided with basic care necessities; and, the quality and quantity of the food does not provide proper nutrition [Doc. No. 1, sequential p. 5]. The following facts are uncontroverted:

1. Inmates at the Kay County facility are given cleaning supplies – Clorox disinfectant, a mop, a bucket – and are expected to clean their areas. Plaintiff received cleaning supplies. Laundry is washed on a daily basis [Doc. No. 54, Defendant's Statement of Uncontroverted Facts, at No. 22].

2. Each inmate is given at least one mat, a blanket, and orange jumpsuits. During the first seventy-two hours of incarceration, an inmate's family may bring socks, boxers, T-shirts, and shampoo. After seventy-two hours, these items may be purchased through the commissary. *Id.* at No. 23.

3. No inmate has been forced to sleep on the floor of the day room. Many inmates do choose to sleep on the floor in the day room, and it is believed they choose to do this because there are televisions in the day room. *Id.* at No. 24.

4. The jail has had problems with toilets overflowing only when inmates plugged up the toilets. Wrappers from soap or commissary would cause it to back up. These backups, however, were remedied when the jail hired a plumber to fix any plumbing problems. In approximately June, 2009, the jail hired a maintenance man who works to keep the toilets unclogged. *Id.* at No. 25.

5. An official with the Health Department reviewed the facility's menu and approved it. *Id.* at No. 26.

6. According to Plaintiff's testimony at his January, 2010, deposition, the facility was not currently over-capacity. *Id.* at No. 28.

To prevail on a claim under the Eighth Amendment, Plaintiff must establish that he was denied "the minimal civilized measure of life's necessities," *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981), "under conditions posing a substantial risk of serious harm" and that jail officials were deliberately indifferent to Plaintiff's health or safety. *Farmer,* 511 U.S. at 834, 837. Here, there is no evidence that the conditions under which Plaintiff was confined were inherently unsafe or that Plaintiff suffered any harm or physical injury as a result of the conditions about which he complains. Plaintiff has not demonstrated that he was incarcerated under "inhuman" conditions, *see Helling v. McKinney,* 509 U.S. 25, 32(1993), and as there are no disputed issues of fact for trial, Defendant Van Hoesen is entitled to summary judgment with regard to Plaintiff's conditions of confinement claim.

**Due Process**

In the third and final count of his complaint, Plaintiff maintains that "Defendants have and continue to refuse to provide Due Process by punishing inmates for misconduct[8] without providing any type of disciplinary process. Privilages are suspended as well as solitary confinement is imposed upon inmates on a regular basis." [Doc. No. 1, sequential p. 6]. Plaintiff has failed to controvert the following, supported facts regarding his due process claim:

1. Plaintiff testified that any due process claim he is asserting is based upon his allegation that he has been subjected to cruel and unusual punishment [Doc. No. 54, Defendant's Statement of Uncontroverted Facts, at No. 32].

2. Plaintiff denies that he was moved to disciplinary segregation or that he received any discipline. He testified that he always remained in a regular cell and has not been segregated. *Id.* at No. 33.

In the absence of a factual basis for Plaintiff's due process claim, summary judgment in favor of Defendant Van Hoesen is warranted.

**RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

It is recommended that Defendant Van Hoesen's motion for summary judgment [Doc. No. 54] be granted.

---

[8]As Defendant notes [Doc. No. 54, p. 21], Plaintiff's record contains a reference to a disciplinary infraction. *See id.* at Exhibit 3, Affidavit of Stephanie Ringold, ¶ 16, Attachment G, Jail Incident Report. This incident occurred in June, 2009 – after this lawsuit was filed – and, as Plaintiff acknowledged by deposition, is not the subject of this case. *See id.* at Exhibit 2, Plaintiff's Deposition, p. 97, lines 12 - 23.

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by the 5th day of July, 2010, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 14th day of June, 2010.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE